CITIZENS UTILITIES COMPANY OF ILLINOIS, Plaintiff-Appellant, *v.*
PHILIP R. O'CONNOR *et al.*, Defendants-Appellees.

Second District   No. 83—307

Opinion filed July 7, 1983.

Daniel J. Kucera, of Chapman & Cutler, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and George Marchetti, of Moss & Bloomberg, Ltd., of Bolingbrook (Hercules F. Bolos, Ed-

ward P. O'Brien, and Steven G. Revethis, Assistant Attorneys General, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Citizens Utilities Company of Illinois, appeals from the circuit court's denial of plaintiff's motion for a temporary restraining order (TRO). (Ill. Rev. Stat. 1981, ch. 110, par. 11—101.) Plaintiff sought to restrain defendants, Philip R. O'Connor, Helen Schmid, Charles Stalon, Andrew Barrett and Daniel Rosenblum (the members of the Illinois Commerce Commission) and Attorney General Neil Hartigan from enforcing an April 6, 1983, order of the Illinois Commerce Commission (Commission) which cancelled the proposed rates which plaintiff had filed with the Commission. The village of Bolingbrook (village) was allowed to intervene in the circuit court proceeding and, along with defendants, opposed plaintiff's motion for a TRO.

Plaintiff raises the following issues on appeal: (1) whether the TRO was improperly denied because plaintiff is suffering continuing serious irreparable harm and has no adequate remedy at law; (2) whether the TRO was improperly denied because all criteria for granting a TRO have been satisfied and no basis for denying a TRO exists; (3) whether the TRO was improperly denied because plaintiff's complaint for injunctive relief, which was incorporated in its motion for a TRO, adequately demonstrates that the Commission's order is confiscatory and unauthorized by law. Defendants and the village have moved to dismiss the appeal because plaintiff has filed an application for rehearing with the Commission. Plaintiff has moved to strike this motion.

Section 36 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 36) requires a public utility to file with the Commission any proposed changes in its rates 30 days prior to the proposed effective date of these changes. This section also provides that the Commission may prevent the proposed rates from going into effect for a statutorily prescribed suspension period pending a Commission hearing on the propriety of the proposed rates. On May 11, 1982, plaintiff filed a proposed rate increase with the Commission. The Commission suspended these proposed rates until October 7, 1982, and then resuspended them until April 7, 1983. Hearings were held before a Commission hearing examiner at various times during this suspension period. On April 6, 1983, the Commission entered an order cancelling the proposed rates. The effect of this order was to leave the existing rates in force.

The Commission's order contained detailed findings. The Commission found, *inter alia*, that plaintiff's present rates, "as best as [could] be determined from the evidence in this record," provided a 6.5% rate

of return on plaintiff's original cost rate base, which the Commission determined to be "the best available evidence of the fair value of [plaintiff's] plant in service." The Commission also found that plaintiff had failed to improve the quality of its service in several respects and had failed to comply with prior directions from the Commission "to record all its deferred income taxes on its books and records."

On April 8, 1983, plaintiff filed its complaint for injunction seeking to enjoin defendants from enforcing the Commission's order. Also, on that date, plaintiff filed a motion for a TRO seeking to restrain the enforcement of the Commission's order. Plaintiff sought this equitable relief prior to applying for a a rehearing before the Commission under section 67 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 71). An application for rehearing and its final disposition by the Commission are statutory prerequisites to an appeal to the courts from a Commission order. Ill. Rev. Stat. 1981, ch. 111²/₃, par. 71.

The circuit court heard arguments on April 8 on the motion for a TRO and found that it had jurisdiction over the matter. The Commission filed no pleadings as it only had been notified the previous day of the motion for a TRO. No evidence was taken. The court then denied the motion. This denial is the subject of this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)).

■ Defendants and the village moved to dismiss this appeal because plaintiff filed an application for rehearing with the Commission subsequent to the trial court's denial of plaintiff's motion for a TRO. They contend that plaintiff has elected its remedy by applying for rehearing and may not simultaneously maintain this appeal since the application for rehearing and this appeal seek to resolve identical issues. However, we do not believe that plaintiff, if it is determined to have been entitled to equitable relief prior to rehearing, should be required to forfeit that entitlement because it acted to protect its statutory right to appeal. If any right to equitable relief exists, it is independent of plaintiff's statutory right to apply for rehearing. Therefore, the motion to dismiss is denied.

■ We must next address whether the circuit court could properly exercise jurisdiction in this matter prior to plaintiff's application for a rehearing before the Commission. Generally, where a claim is cognizable in the first instance by an administrative agency alone, administrative remedies must be exhausted before the case may be considered by the courts. (*People ex rel. Fahner v. American Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, 485-86, 427 N.E.2d 1226.) Section 67 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 71) requires an application for rehearing before the Commission and its final disposi-

tion prior to seeking review in the courts. The reason for this requirement is to give the Commission an opportunity to correct any mistakes of law or of fact that it has allegedly made before the party claiming error resorts to the courts. (*Scherer Freight Lines, Inc. v. Illinois Commerce Com.* (1962), 24 Ill. 2d 359, 364, 181 N.E.2d 134; *Meinhardt Cartage Co. v. Illinois Commerce Com.* (1959), 15 Ill. 2d 546, 550, 155 N.E.2d 631.) Therefore, an application for rehearing generally must have been made and finally disposed of by the Commission in order for a party to have exhausted its administrative remedies and thus become eligible to seek judicial review of a Commission order.

■ Plaintiff does not dispute that a rehearing must normally be sought before resorting to the courts. Rather, it maintains that this case falls within one of the recognized exceptions to the exhaustion requirement and that therefore, it was entitled to seek equitable relief in the courts prior to applying for a rehearing.

Several exceptions to the exhaustion requirement have been recognized. In *People ex rel. Fahner v. American Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, 427 N.E.2d 1226, the court noted the following exceptions: (1) where an ordinance or statute is attacked as unconstitutional in its entirety; (2) where multiple remedies exist before the same zoning board and at least one has been exhausted; (3) where irreparable harm will result from further pursuit of administrative remedies; (4) where it would be patently useless to exhaust administrative remedies. (86 Ill. 2d 479, 487-88, 427 N.E.2d 1226.) A fifth exception, that administrative remedies need not be exhausted where an administrative rule is challenged on its face as not being authorized by the agency's enabling legislation, has also been recognized. (*City of Chicago v. Illinois Commerce Com.* (1980), 79 Ill. 2d 213, 217, 402 N.E.2d 595.) Plaintiff, in its appellate brief, argues that this case falls within the irreparable harm and the unauthorized-by-the-enabling-legislation exceptions. In its reply brief, plaintiff additionally argues that this case falls within the "patently useless" exception.

Plaintiff contends that it is suffering continuing irreparable harm because the rates in force are confiscatory. Plaintiff claims that these rates yield approximately $15,000 per day less revenue than the proposed rates would yield and that this lost revenue can never be recouped because rate-making is only prospective. The leading case on the irreparable harm exception is *People Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 25 N.E.2d 482. *Slattery* has been cited by our supreme court as standing for the proposition that exhaustion is not required where irreparable harm will result from further pursuit of administrative remedies. (*E.g., People ex rel. Fahner v. American*

*Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, 487, 427 N.E.2d 1226; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, 326 N.E.2d 737.) In *Slattery*, the court held that the Commission's denial of a temporary rate increase, pending a hearing on a permanent rate increase, ended the Commission's "legislative function so far as temporary rates were concerned." (373 Ill. 31, 44, 25 N.E.2d 482.) The court stated:

> "[W]hen the legislative process of rate-making is ended and the rate in force becomes confiscatory,—that is, results in the taking of property without process of law,—and either adequate means under the administrative provisions or the manner of administering such means is inadequate to prevent confiscation, then a court of equity has jurisdiction to remedy the wrong in an independent equity proceeding." 373 Ill. 31, 44, 25 N.E.2d 482.

Plaintiff contends, based on *Slattery*, that it is entitled to seek equitable relief in the courts because the rates in force are confiscatory and the administrative provisions are inadequate to prevent confiscation. However, *Slattery* is distinguishable because here the rate-making process has not ended. In *Slattery*, the utility sought to enjoin enforcement of an existing rate schedule. At the time the injunction was sought the utility's proposed rates were under suspension. A hearing had been held on these rates but the Commission had not entered an order disposing of the matter. After the hearing, the utility had petitioned the Commission to install its proposed rates as temporary rates and this petition had been denied. The court held that the legislative action of the Commission on the question of temporary rates had been terminated and that an appeal could be taken from this denial without applying for a rehearing. No application for rehearing was required because the Commission can suspend proposed rates for the statutorily prescribed period without a hearing. The court noted that the only requirement for appeal from an order entered by the Commission without a hearing is to make application for a hearing. The court found that this requirement had been met by the application for temporary rates. The court stated that there was no further action that could be taken by the Commission after its denial of the temporary rates.

The court went on to hold that an appeal to the courts could not provide relief from confiscatory rates because the court's power on appeal was limited to affirming the order or remanding the case to the Commission and did not include the power to set rates. (373 Ill. 31, 41, 25 N.E.2d 482.) A remand would not put the temporary rates into effect and, since the proposed rates were still under suspension, the confiscation, if it were in fact occurring, would continue. Thus, it was

proper to seek equitable relief from the court's because irreparable harm would result from pursuing the statutory remedies if confiscation were actually occurring.

■ The situation is different in the case at bar. Here, temporary rates are not in issue. The Commission has entered an order cancelling the proposed rates after a hearing. An application for rehearing is a prerequisite to an appeal from this Commission order. (Ill. Rev. Stat. 1981, ch. 111⅔, par. 71.) Thus, unlike the situation in *Slattery*, an appeal to the courts under the act was not available to plaintiff at the time it filed its motion for a TRO because the Commission had not taken the final step in the legislative process of rate-making. Unlike *Slattery*, where the next step in the statutory review process could not provide relief since the circuit court on appeal could not install the desired rates, the Commission on rehearing possesses the necessary rate-making power as well as the power to stay its order, thus allowing the proposed rates to go into effect, pending its action on the application for rehearing. (Ill. Rev. Stat. 1981, ch. 111⅔, par. 71.) Therefore, we hold that no irreparable harm would occur from requiring plaintiff to exhaust its administrative remedies by seeking a rehearing because the Commission on an application for rehearing has the power necessary to allow the proposed rates to go into effect. Plaintiff's resort to the courts is premature. The remedy available on rehearing is " 'clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy' " (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, 370 N.E.2d 223), and therefore deprives equity of its power to grant equitable relief. 68 Ill. 2d 540, 549, 370 N.E.2d 223.

■ Plaintiff also argues that it is suffering irreparable harm because the current rates provide approximately $15,000 per day less revenue than the proposed rates would provide. It contends that this is a daily confiscation of its property and that it would be irreparably harmed by applying for rehearing because the rehearing process could take up to 170 days before a final Commission order would be required. While it is true that the Commission has 20 days in which to grant or deny an application for rehearing and 150 days in which to enter a final order if it grants rehearing (Ill. Rev. Stat. 1981, ch. 111⅔, par. 71), the maximum period of delay relevant to plaintiff's request for equitable relief is the initial 20 days.

Within 20 days of plaintiff's application for rehearing, the Commission must grant or deny the application. If the Commission denies the application, then the legislative process of rate-making would be complete and the case would be ripe for appeal to the courts. At this junc-

ture, plaintiff could seek equitable relief from the courts. (See *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 25 N.E.2d 482.) If the application is granted, plaintiff could seek a stay of the order from the Commission pending the final order on rehearing. (Ill. Rev. Stat. 1981, ch. 111⅔, par. 71.) In light of the purpose of the rehearing requirement, that the Commission be given an opportunity to correct mistakes of law or fact that it may have made (*Scherer Freight Lines, Inc. v. Illinois Commerce Com.* (1962), 24 Ill. 2d 359, 364, 181 N.E.2d 134; *Meinhardt Cartage Co. v. Illinois Commerce Com.* (1959), 15 Ill. 2d 546, 550, 155 N.E.2d 631), we hold that plaintiff would not suffer irreparable harm by being required to apply for rehearing and to await the granting or denying of that application by the Commission. Thus, we hold that this case does not fall within the irreparable harm exception to the exhaustion of remedies requirement.

■ ■ In its reply brief, plaintiff also argues that this case falls within the exception to the exhaustion of remedies doctrine for cases where pursuit of administrative remedies would be patently useless. Plaintiff first raised this issue in its reply brief and therefore it has been waived. (87 Ill. 2d R. 341(e)(7); *Will v. Will Products, Inc.* (1982), 109 Ill. App. 3d 778, 785, 441 N.E.2d 343; *Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 424 N.E.2d 911.) Even if we were to address this argument it would fail. "The exhaustion requirement cannot be avoided simply because relief may be, or even probably will be, denied." (*Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 89, 383 N.E.2d 964.) It appears from the record that plaintiff did not raise the arguments it raises on appeal when it was before the Commission. Since the Commission did not have an opportunity to address these issues, it cannot be said that it would be patently useless for plaintiff to raise them in an application for rehearing.

■ Plaintiff also argues that the Commission's order was unauthorized by law, and therefore, that this case falls within another exception to the exhaustion of remedies requirement. Exhaustion is not required where an administrative rule is challenged on its face as not authorized by the agency's enabling legislation. (*City of Chicago v. Illinois Commerce Com.* (1980), 79 Ill. 2d 213, 217, 402 N.E.2d 595.) Plaintiff maintains that the Commission's consideration of quality of service and its consideration of plaintiff's alleged noncompliance with prior Commission orders was unauthorized by the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 1 *et seq.*). This allegation challenges the Commission's order on its face as unauthorized by the agency's enabling legislation and, therefore, exhaustion is not required. Thus, the trial court properly exercised jurisdiction in this case.

■ Since the trial court properly exercised jurisdiction in this case, we must decide whether the motion for a TRO was properly denied. It has been held that a TRO issued with notice and a preliminary injunction issued with notice are the same type of relief. (*Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B Graphic Arts International Union* (1976), 63 Ill. 2d 514, 524, 349 N.E.2d 36; *Kaplan v. Kaplan* (1981), 98 Ill. App. 3d 136, 140, 423 N.E.2d 1253.) Here, plaintiff sought a TRO and gave notice to defendants. The parties later agreed that the court should treat the motion as one for a preliminary injunction. Whether the court considered the motion to be for a TRO or for a preliminary injunction makes no practical difference here. 98 Ill. App. 3d 136, 140, 423 N.E.2d 1253.

■ The purpose of a TRO is to allow the trial court to preserve the status quo until it can hold a hearing to determine whether it should grant a preliminary injunction or until the court can consider the case on its merits. (*Bismarck Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 175, 415 N.E.2d 517.) The plaintiff is not required to make out a case which would entitle him to judgment at trial; rather, he only needs to show that he raises a "fair question" about the existence of his right and that the court should preserve the status quo until the case can be decided on the merits. (*Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 541-42, 447 N.E.2d 288.) As plaintiff's complaint for interlocutory relief was heard prior to the Commission having answered and without evidence, the trial court's determination must be made upon the basis of the sufficiency of the complaint. (See *Webb v. Rock* (1980), 80 Ill. App. 3d 891, 896, 400 N.E.2d 959; *Hall v. Orlikowski Construction Co.* (1974), 24 Ill. App. 3d 60, 62-63, 321 N.E.2d 23.) Since a TRO issued with notice and a preliminary injunction issued with notice are the same type of relief (*Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B Graphic Arts International Union* (1976), 63 Ill. 2d 514, 524, 349 N.E.2d 36), the plaintiff is required to make a showing sufficient for a preliminary injunction. *Webb v. Rock* (1980), 80 Ill. App. 3d 891, 896, 400 N.E.2d 959.

■ The granting or denial of a TRO or preliminary injunction is within the sound discretion of the trial court and its determination will not be overturned absent a showing of an abuse of that discretion. (*Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 541, 447 N.E.2d 288; *Levitt Homes, Inc. v. Old Farm Homeowners' Association* (1982), 111 Ill. App. 3d 300, 307, 444 N.E.2d 194; *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 502, 392 N.E.2d 1148.) In order for a preliminary injunction to issue

plaintiff must establish (1) that he possesses a clearly ascertained right which needs protection; (2) that he will suffer irreparable harm without an injunction; (3) that there is no adequate remedy at law for his injury; (4) that he is likely to be successful on the merits of his action. *Levitt Homes, Inc. v. Old Farm Homeowners' Association* (1982), 111 Ill. App. 3d 300, 307, 444 N.E.2d 194; *Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 284, 422 N.E.2d 953.

■■■ Plaintiff argues that it is entitled to a TRO because the Commission's order was confiscatory, unauthorized by law, and void for failure to make required findings of what are just and reasonable rates. Plaintiff further contends it is suffering irreparable harm and that it has no adequate remedy at law. The trial court stated that plaintiff had a "clear and open remedy" because plaintiff could obtain further consideration by the Commission. As discussed earlier in this opinion, plaintiff will not suffer irreparable harm if it is required to seek a rehearing before the Commission. We believe that the rehearing procedure provided by the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 71) provides plaintiff with an adequate remedy at this point. Therefore, the trial court did not abuse its discretion in denying plaintiff's motion for a TRO since the requirements that plaintiff be suffering irreparable harm and that no adequate remedy at law exist have not been met. Having determined that the TRO was properly denied for these reasons, we need not address whether plaintiff possesses a clearly ascertained right which needs protection and whether plaintiff is likely to be successful on the merits of the action. The posture in which we find this case does not require us to consider whether the Commission's order is confiscatory, void for failure to make required findings, or unauthorized by law. We simply decide for the reasons discussed above that at the time the court below heard this case it did not abuse its discretion in denying the requested relief.

For the foregoing reason the judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT and NASH, JJ., concur.