Gen. No. 1-08-2055, Nos. 1-08-2056, 1-08-2189, 1-08-2304, 1-08-2451, 1-08-2452, 1-08-2453
(Consolidated)

FIFTH DIVISION
December 17, 2010


THE PEOPLE *ex rel.* LISA MADIGAN, Attorney )
General of Illinois; CITIZENS UTILITY BOARD; )    On Direct Review of Orders of the
THE CITY OF CHICAGO; MULTIUT                )     Illinois Commerce
CORPORATION; NORTH SHORE GAS                )     Commission in its Docket Nos.
COMPANY; and THE PEOPLES GAS LIGHT          )     07-0241/07-0242 Consolidated
AND COKE COMPANY                            )
                                            )
                                            )
                                            )
            Petitioners,                    )     Gen. No. 08-01-2055
                                            )     Nos. 1-08-2056, 1-08-2189,
                                            )      1-08-2304, 1-08-2451, 1-08-2452,
                                            )       1-08-2453 (Consolidated)
v.                                          )
                                            )     Charles E. Box,
ILLINOIS COMMERCE COMMISSION;               )     Chairman of the Illinois.
THE PEOPLE *ex rel.* LISA MADIGAN, Attorney )     Commerce Commission
General of Illinois; CITIZENS UTILITY BOARD; )
THE CITY OF CHICAGO; CONSTELLATION          )
NEWENERGY, INC.; CONSTELLATION              )
NEWENERGY - GAS DIVISION, LLC;              )
ENVIRONMENTAL LAW AND POLICY                )
CENTER; ILLINOIS INDUSTRIAL ENERGY          )
CONSUMERS (styled as such collectively from the )
following intervenors: Abbott Laboratories, Inc., )
General Iron Industries, and the University of  )
Illinois); MULTIUT CORPORATION; NICOR       )
ADVANCED ENERGY, LLC; PRAIRIE POINT         )
ENERGY, LLC; RETAIL GAS SUPPLIERS           )
(styled as such collectively from the following )
intervenors: Direct Energy Services, LLC,   )
Dominion Retail Inc., Interstate Gas Supply of )
Illinois, Inc., and US Energy Savings Corporation); )
LOCAL UNION NO. 18007, UTILITY              )
WORKERS UNION OF AMERICA, AFL-CIO;          )
and VANGUARD ENERGY SERVICES, LLC,          )
                                            )
            Respondents.                    )

Gen. No. 1-08-2055, Nos. 1-08-2056, 1-08-2189, 1-08-2304, 1-08-2451, 1-08-2452, 1-08-2453
(Consolidated)

JUSTICE JOSEPH GORDON delivered the judgment of the court, with opinion.

Justices Cahill and McBride concurred in the judgment and opinion.

**OPINION**

This is an appeal from an order of respondent the Illinois Commerce Commission (ICC or respondent), cancelling previous gas rates for customers in Illinois and authorizing North Shore Gas Company (North Shore) and Peoples Gas Light and Coke Company (Peoples Gas) (together, the Utilities) to file new tariff sheets. Petitioners, the People of the State of Illinois (People), the Citizens Utility Board (CUB) and the City of Chicago (Chicago) (together, the GC petitioners), the Utilities, and Multiut Corporation (Multiut), now appeal from that order on various grounds. Respondent contends, *inter alia*, that this court does not have jurisdiction to reach the merits of this appeal under the Public Utilities Act (Act) (220 ILCS 5/10-201(a) (West 2008)), because the Illinois Appellate Court for the Second District was first to acquire jurisdiction over this matter. For the reasons discussed below, we agree with respondent and transfer this case back to the Second District.

I. BACKGROUND

On March 9, 2007, the Utilities filed tariffs with the ICC proposing general increases in natural gas rates of $102,560,000 for Peoples Gas and $6,314,000 for North Shore, new rate mechanisms and other tariff revisions. On April 4, 2007, the ICC suspended the proposed rates and initiated contested rate cases to examine the proposed rates and revisions. Several parties intervened, including the parties to this appeal, and an evidentiary hearing was held.

-2-

The ICC entered its dispositive order on February 5, 2008, permanently cancelling previous gas rates and ordering the filing of new tariff sheets. In doing do, the ICC authorized Peoples Gas to file new tariff sheets designed to produce annual revenues of $461,780,000, which reflected an increase of $71,191,000; and North Shore to file new tariff sheets to produce annual revenues of $63,439,000, reflecting a decrease of $213,000. In calculating those rates, the ICC denied the Utilities recovery of certain incentive compensation and pension costs. However, the ICC authorized a volume balancing adjustment rider (Rider VBA), a decoupling mechanism that imposes a monthly per-customer surcharge for decreased gas consumption, and a credit for increased gas consumption. In addition, the ICC authorized two changes to the full standby transportation rider (Rider FST), a rider used by transportation customers.

Several parties, namely, the People, the Utilities, Multiut, the Illinois Industrial Energy Consumers (IIEC), the University of Illinois (UI), the CUB, and Chicago, filed applications for rehearing within the statutorily allowed period of 30 days. On March 26, 2008, the ICC issued a notice of commission action allowing IIEC and UI's rehearing application on only one issue and denied all other applications for rehearing.

Each party sought to file an appeal, in varying chronological order, which raises the jurisdictional question that we now address. Substantively, GC petitioners contend that the ICC erred in authorizing the Rider VBA because it violates the prohibition against single-issue rate-making and test-year principles, it improperly discriminates against two classes of customers, and the Utilities did not prove that it was necessary. They also argue that the ICC also erred in calculating the reduction in the Utilities' return on equity due to the decreased risk brought by the

rider and in calculating the rates by failing to account for some portions of depreciation of the rate base. Moreover, the Utilities contend that the ICC erred by not including all of their incentive compensation in the rate base and operating expenses, by excluding pension costs from the rate base, and by making a reduction in their approved rate of return to account for the lower risk caused by Rider VBA. Finally, Multiut contends that the ICC erred in allowing changes to Rider FST because, in doing so, it approved a non-unanimous settlement without conducting an independent factual review.

On April 28, 2008, before the last order disposing of the issue for which rehearing was allowed, the Utilities filed a petition for judicial review in the Second District. Likewise, Abbott Laboratories (Abbott), which is one of the Illinois Industry Energy Consumers[1] filed a petition for review in the Second District, and the People did the same on May 6, 2008, both before an order was entered disposing of the last pending issue for which rehearing was granted. Subsequently, on July 30, 2008, the ICC entered an order disposing of the last issue for which rehearing was allowed and amending its previous order to reflect that determination. Those orders were served on the parties on July 31, 2008. At 9:23 a.m. that day, the People filed a petition for review in the First District, at 11 a.m., the Utilities refiled a petition for review in the Second District, and at 11:17 that day, the CUB filed its petition in the First District. On August 18, 2008, Chicago also filed its petition for review in the First District, and the People filed a

---

[1]It appears from the Joint Appendix filed by the parties to this appeal that Abbott has formally withdrawn from this appeal, and its former participation is not an issue in this case.

motion in the Second District to dismiss the petitions filed before July 30 as premature and to transfer the Utilities' second petition to the First District. Multiut subsequently filed its petition for review in the First District on August 22, 2008. Although the People filed a motion asking to transfer only the Utilities' second petition, the Second District, on August 26, 2008, apparently transferred the Utilities' first petition and other pending appeals to the First District on its own motion. In doing so, the Second District Appellate Court entered a transfer order without elaboration, in which it determined that the First District Appellate Court had jurisdiction over these appeals. The transferred appeals have been consolidated with four appeals that had been filed in the First District.

On October 1, 2008, respondent filed a motion to the supreme court for a supervisory order to vacate the transfer orders of the Second District and to order that all appeals be transferred and consolidated in the Second District. The supreme court denied the motion on October 29, 2008.

Respondent now contends that the First District does not have jurisdiction over the appeal because the Second District was first to acquire jurisdiction and under the Public Utilities Act, it now has exclusive jurisdiction over the appeals. The Utilities agree with respondent's contention. The GC petitioners did not address this issue in their brief, but pursuant to this court's request at oral argument, the People submitted their response to respondent's motion to the supreme court for a supervisory order. In that response, the People contend that the First District has jurisdiction under the Act because the petitions filed in the Second District were premature and the First District was, therefore, first to acquire jurisdiction over the petitions. The ICC responds

that, although the petitions filed in the Second District were premature when filed, that court was first to acquire jurisdiction because the petitions became effective when the ICC entered its order on rehearing. We agree with that contention and therefore transfer the appeal to the Second District Appellate Court.

## II. ANALYSIS

In response to the appeals filed in the First District, respondent contends that this court does not have jurisdiction to review the order from the ICC. The Utilities, which are petitioners, state that they are in agreement with respondent's contentions that this court does not have jurisdiction, but assert that they are not pursuing that subject in their brief. Respondent and the Utilities maintain that because the Second District was first to obtain jurisdiction, section 10-201(a) of the Act precludes this court from acquiring jurisdiction over this matter. For the foregoing reasons, we agree with respondent.

We first note that petitioners appeal from a decision of the ICC, an administrative body. This court has jurisdiction to review administrative decisions only as provided by law, and we must exercise special statutory jurisdiction to review such administrative action. Ill. Const. 1970, art. VI, §6; *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 121; 866 N.E.2d 227, 237-38 (2007). Accordingly, the statute that confers special statutory jurisdiction to an appellate court to review an administrative decision also limits it. *Town & Country Utilities, Inc.*, 225 Ill. 2d at 122, 866 N.E.2d at 237-38.

The statute that gives an appellate court jurisdiction to review an order from the ICC is section 10-201(a) of the Public Utilities Act (220 ILCS 5/10-201(a) (West 2008)). Under section

10-201(a) of the Act:

"Within 35 days from the date that a copy of the order or decision sought to be reviewed was served upon the party affected by any order or decision of the Commission refusing an application for a rehearing of any rule, regulation, order or decision of the Commission, including any order granting or denying interim rate relief, or within 35 days from the date that a copy of the order or decision sought to be reviewed was served upon the party affected by any final order or decision of the Commission upon and after a rehearing of any rule, regulation, order or decision of the Commission, including any order granting or denying interim rate relief, any person or corporation affected by such rule, regulation, order or decision, may appeal to the appellate court of the judicial district in which the subject matter of the hearing is situated, or if the subject matter of the hearing is situated in more than one district, then of any one of such districts, for the purpose of having the reasonableness or lawfulness of the rule, regulation, order or decision inquired into and determined.

The court first acquiring jurisdiction of any appeal from any rule, regulation, order or decision shall have and retain jurisdiction of such appeal and of all further appeals from the same rule, regulation, order or decision until such appeal is disposed of in such appellate court." 220 ILCS 5/10-201(a) (West 2008).

Thus, for an appellate court to have jurisdiction over an order from the ICC, the subject

-7-

matter of the proceeding must be located in the judicial district of the appellate court, and "if the subject matter of the hearing is situated in more than one district," the appellate court which first acquires "jurisdiction of any appeal" from the decision is the court that retains jurisdiction until the appeal is disposed of in that court. 220 ILCS 5/10-201(a) (West 2008).

In this case, the record shows that while all of Peoples Gas' customers are located in Cook County, which is in the First Judicial District, North Shore also serves customers in Lake County, in the Second Judicial District. Having determined that the subject matter is situated in two judicial districts, we must consider which district first acquired jurisdiction over the appeal from the ICC's order. See, e.g. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 394 Ill. App. 3d 382, 389, 915 N.E2d. 453, 459 (2009).

The People contend, in their objection to the motion for a supervisory order, that the First District was first to acquire jurisdiction over this matter because the petitions filed in the Second District were premature, and the first petition filed after the ICC's order on rehearing was filed in the First District. In doing so, they contend that the Act, which confers exclusive jurisdiction on the first appellate court to acquire it, also precludes jurisdiction on appeals filed before an application for rehearing is finally disposed of by the commission, by providing that "[n]o appeal shall be allowed from any rule, regulation, order or decision of the Commission unless and until an application for a rehearing thereof shall first have been filed with and finally disposed of by the Commission." 220 ILCS 5/10-113(a) (West 2008).

We agree with the contention that jurisdiction would not have attached to the Second District by the filings of April 28, May 2, and May 6, 2008, as of the time they were filed, since

the ICC had yet to rule on the last issued on which rehearing was granted. Nevertheless, those petitions would have been sufficient to confer jurisdiction as of the moment that the final order on rehearing was entered, pursuant to the Illinois Supreme Court Rule 303(a)(2) (eff. May 30, 2008), which provides that prematurely filed appeals become automatically effective at the time when the appeal may properly be filed. Under that rule:

"When a timely postjudgment motion has been filed by any party, whether in a jury case or a nonjury case, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, or before the final disposition of any separate claim, becomes effective when the order disposing of said motion or claim is entered. A party intending to challenge an order disposing of any postjudgment motion or separate claim, or a judgment amended upon such motion, must file a notice of appeal, or an amended notice of appeal within 30 days of the entry of said order or amended judgment, but where a postjudgment motion is denied, an appeal from the judgment is deemed to include an appeal from the denial of the postjudgment motion." Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008).

Thus, we find that the Second District was first to acquire jurisdiction over this appeal. Under the current version of Rule 303(a)(2), otherwise premature petitions for review are held by the appellate court and become effective when an order resolving the last pending motion is entered. Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008). For instance, in *In re Marriage of Duggan*, 376 Ill. App. 3d 725, 734, 877 N.E.2d 1140, 1148 (2007), where an appellant's notice of appeal had been filed during the pendency of a motion, the court held that under the current Rule

303(a)(2), the notice of appeal became effective when the motion was decided and the court acquired jurisdiction over the appeal at that time. Thus, courts no longer have to dismiss such premature appeals, as would have been the case under the earlier rule. *Duggan*, 376 Ill. App. 3d at 734, 877 N.E.2d at 1148. Instead, they can defer a premature notice of appeal until the moment when the underlying decision matures, at which time the prematurely filed notice of appeal becomes instantly effective. Here, the petitions for review filed in the Second District during pendency of rehearing became effective on July 30, 2008, at which time the appeals matured when the ICC entered its order disposing of the last pending issue on rehearing. Since the People did not file a petition for review in the First District until July 31, 2008, the Second District was first to acquire jurisdiction over the appeal. Therefore, the First District does not have jurisdiction to review the ICC's order under section 10-201(a) of the Act, and the Second District must retain jurisdiction until the appeal is disposed of on its merits. 220 ILCS 5/10-201(a) (West 2008); *Madigan*, 394 Ill. App. 3d at 386, 915 N.E.2d at 457.

The People have urged that Rule 303(a) would apply only to dispositions from lower courts, but not to administrative decisions as was the case here. That contention would fail pursuant to the Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994), which provides:

"The procedure for a statutory direct review of orders of an
administrative agency by the Appellate Court shall be as follows:

\*\*\*

\*\*\* Insofar as appropriate, the provisions of Rules 301 through 373
(except for Rule 326) are applicable to proceedings under this rule. As used in

-10-

any applicable rule, the term "appellant" includes a petitioner and the term "appellee" includes a respondent in proceedings to review or enforce agency orders." Ill. S. Ct. R. 335(i) (eff. Feb. 1, 1994).

Accordingly, administrative proceedings are encompassed within the provisions of Rule 303(a)(2). This conclusion is supported by *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 368 Ill. App. 3d 734, 738-739, 858 N.E.2d 65, 74 (2006), and *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460. In *Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74, the Second District held that Rule 303(a)(2) was applicable to appeals from the ICC in determining whether jurisdiction had been conferred on appellate courts when parties had filed premature appeals from orders by the ICC. See *Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74 ("Because the legislature did not express an intent to exercise its power to promulgate a rule preempting Rule 303(a)(1)'s 'last pending post-judgment motion' provision, Rule 303(a) is applicable here"). Similarly, in *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460, the Fourth District determined that it had not been the first to acquire jurisdiction over an appeal from an order by the ICC, applying the former version of Rule 303(a)(2), at the supreme court's direction on remand. See *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460 ("At the time of the January 2007 ruling, the applicable Rule 303(a)(2) appeared at 210 Ill. 2d R. 303(a)(2)").

Nevertheless, the People contend that, notwithstanding Rule 335, Rule 303(a)(2) does not apply to a petition for judicial review while a rehearing is pending. They maintain that, unlike a final order from a trial court, which can itself be appealed, an order from the ICC cannot be final

because the Act does not permit an administrative order to be judicially reviewed until an order on rehearing is entered or the statutory limit runs. Accordingly, the People claim that Rule 303(a)(2) is applicable only to postjudgment motions made after final judgments and does not apply to administrative decisions before an order on rehearing is entered.

That distinction was explicitly rejected in *Madigan*, 394 Ill. App. 3d at 389-390, 915 N.E.2d at 459-60, and *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738-39, 858 N.E 2d at 74. In *Commonwealth Edison Co.*, 368 Ill. App. 3d at 736, 858 N.E.2d at 72, the ICC issued an order and several parties filed applications for rehearing. Two of those parties, ComEd and Ameren, filed petitions for judicial review after the ICC had denied their applications for rehearing, but before it had disposed of the last pending application for rehearing by other parties. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 736, 858 N.E.2d at 72. ComEd filed its petition in the Second District and Ameren filed its appeal in the Fourth District. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 736, 858 N.E.2d at 72. After the ICC disposed of the last pending applications for rehearing of all the parties, the People filed a petition for review in the First District. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 736, 858 N.E.2d at 72. ComEd subsequently moved to transfer the pending appeals to the Second District, and Ameren moved to transfer them to the Fourth District. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 737, 858 N.E.2d at 72. Both motions were granted, and the People then filed motions in the Second and Fourth Districts to dismiss the appeals filed before the ICC disposed of the last pending rehearing and to transfer the remaining appeals back to the First District. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 737, 858 N.E.2d at 73.

The People argued that the First District had been first to acquire jurisdiction because ComEd's and Ameren's petitions filed before the ICC denied the last applications for rehearing were premature under Rule 303(a)(1), which provides that petitions for review must be filed "'after the entry of the order disposing of the last pending post-judgment motion,'" and under the previous version of Rule 303(a)(2), a notice of appeal filed before that time "'shall have no effect and shall be withdrawn.'" *Commonwealth Edison Co.*, 368 Ill. App. 3d at 737-38, 858 N.E.2d at 73, quoting Ill. S. Ct. R. 303(a)(2) (eff. Feb. 1, 1994). In response, ComEd, Ameren and the ICC argued that the petitions filed before the ICC's order disposing of the last rehearing petition were not premature because Rule 303(a) was inapplicable to appeals from administrative orders. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738, 858 N.E.2d at 73. Instead, ComEd, Ameren and the ICC contended that section 10-201(a) of the Act should control because it provides a party-specific right to file a petition for review of an ICC order once the ICC denied that party's application for rehearing, and does not make an appeal dependent on other parties' applications for rehearing. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738, 858 N.E.2d at 73.

The court agreed with the People and found that their appeals were premature specifically because the "last pending post-judgment motion" of Rule 303(a)(1). *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738-39, 858 N.E.2d at 73-74, citing Ill. S. Ct. 303(a)(1) (eff. Feb. 1, 1994). Accordingly, the Second District determined that it was not the first to acquire jurisdiction, solely relying on the former version of Rule 302(a)(2), which provided that appeals filed during the pendency of postjudgment motions were ineffectual. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74. In doing so, the court recognized that the Act

-13-

provides a "party-specific right" to appeal from an ICC order following the ICC's refusal of that party's application for rehearing. However, the court determined that section 10-201(a) cannot preempt the applicability of Rule 303(a), stating:

"Section 10-201(a) does not expressly state that, in the event that multiple parties file applications for rehearing, a party wishing to appeal does not have to wait for the ICC to dispose of all timely filed applications for rehearing. Section 10-201(a) does not address multiple applications for rehearing but, rather, speaks only to the situation where a single application for rehearing is filed. *** Because the legislature did not express an intent to exercise its power to promulgate a rule preempting Rule 303(a)(1)'s 'last pending post-judgment motion' provision, Rule 303(a) is applicable here. Thus, the petitions for review docketed as Nos. 2-06-0149 and 4-06-0118 were premature under Rule 303(a)(1) and, consequently, ineffectual under [former] Rule 303(a)(2)." *Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74, quoting Ill. S. Ct. R. 303(a)(1)(eff. Feb. 1, 1994).

The court's reliance on Rule 303(a) in *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738, 858 N.E.2d at 74, is supported by *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460, in which the Fourth District was directed to consider whether it was the first to acquire jurisdiction over an appeal that had been first filed in that district before the ICC disposed of the last issue pending. *Madigan*, 394 Ill. App. 3d at 386, 915 N.E.2d at 457. In that case, Illinois Bell filed tariffs with the ICC changing the classification of some of its services, and the ICC later entered

an order authorizing the change and making certain rate limits. *Madigan*, 394 Ill. App. 3d at 384-85, 915 N.E 2d at 455-56. Illinois Bell, the People, and several other parties, including AARP, filed applications for rehearing with the ICC. The ICC subsequently denied all of the applications for rehearing, except for one filed by AARP. *Madigan*, 394 Ill. App. 3d at 385, 915 N.E.2d at 456. Before the ICC disposed of the last pending rehearing application, Illinois Bell filed two petitions for judicial review in the Fourth District, and the People later filed for a petition in the First District. *Madigan*, 394 Ill. App. 3d at 385, 915 N.E.2d at 456. On Illinois Bell's motion, the First District transferred the People's petition to the Fourth District without ruling on jurisdiction. Madigan, 394 Ill. App. 3d at 385, 915 N.E.2d at 456. The Fourth District later dismissed Illinois Bell's appeals for having been filed prematurely and subsequently dismissed the People's appeal because their petition for rehearing had been untimely. *Madigan*, 394 Ill. App. 3d at 385, 915 N.E.2d at 456. The supreme court thereafter reversed the dismissal of the People's appeal and remanded it, ordering the Fourth District to determine which district first acquired jurisdiction over that appeal. *Madigan*, 394 Ill. App. 3d at 386, 915 N.E. 2d at 457.

The People argued that because the Fourth District dismissed Illinois Bell's appeals for lack of jurisdiction, the First District was first to acquire jurisdiction. *Madigan*, 394 Ill. App. 3d at 386, 915 N.E.2d at 457. Illinois Bell maintained that under the amended version of Rule 303(a)(2), its appeals to the Fourth District had been timely. *Madigan*, 394 Ill. App. 3d at 389, 915 N.E.2d at 457. The supreme court, in remanding the case, "instruct[ed] the Fourth District to also consider its jurisdiction in light of Rules 303 and 335." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 389, 899 N.E.2d 227, 237 (2008). Accordingly, the Fourth

District looked to the former version of Rule 303(a)(2) in determining that it could not reopen an appeal that had been dismissed, and had not been the first to acquire jurisdiction, stating:

> "At the time of the January 2007 ruling [dismissing the previously filed appeals as premature], the applicable Rule 303(a)(2) appeared in 210 Ill. 2d R. 303(a)(2). Interestingly, it is this version of the rule the *Madigan* court told this court to consider. *** Under this version, petitions for review filed in the appellate court before the Commission resolved all of the postjudgment motions were untimely and deprived the appellate court of jurisdiction over such petitions."
>
> *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460.

While the court in *Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74, dealt with the preamendment version of Rule 303(a)(2) in applying it to administrative proceedings, there is no cogent reason or basis to differentiate between its applicability to administrative proceedings in its postamendment version as well. Consistently, in *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460, where the court applied the preamendment version of Rule 303(a)(2) to administrative proceedings, the court explained that the amended version would have been applicable to those administrative appeals but for the fact that dismissals occurred while the preamendment version of Rule 303(a)(2) was still in force. The court stated that, "[w]hile the amended version may have applied if it were effective while Illinois Bell's appeals were pending, it cannot be used to resurrect a final judgment." *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460. Here, when the Utilities and the People filed their appeals in the Second District, their own applications for rehearing had already been denied by the ICC, and the only pending rehearing

motions were from other parties, namely, IIEC and UI. Thus, although the appeals were premature at the time, it was not because their own order was not final under the Public Utilities Act, but because Supreme Court Rule 303(a)(1) did not allow the appeals until the last pending motion of all the parties was decided. Accordingly, Rule 303(a)(2) is applicable to the petitions for review filed while rehearing was pending, which became effective when the ICC's order on rehearing was entered.

In fact, unlike the court in *Commonwealth Edison Co.*, 368 Ill. App. 3d at 735, 858 N.E.2d at 72, we do not have an order from the supreme court based on its supervisory powers directing us to reach the merits of this case. Although the supreme court denied the ICC's motion to vacate the Second District's *sua sponte* transfer order, a supreme court's denial of a motion for a supervisory order does not have the effect of a ruling on any issue, nor does it support the decision of the lower court. *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 417, 607 N.E.2d 1356, 1363 (1993). In that case, a circuit court had found that when the supreme court denied a motion for supervisory order, it supported the circuit court's interpretation of a discovery rule and decided the issue, and the Fifth District reversed noting that the lower court's conclusions had been erroneous. *Roth*, 241 Ill. App. 3d at 416-17, 607 N.E.2d at 1362-63. Similarly, the supreme court in this case denied a motion for a supervisory order vacating the Second District's transfer, and we, therefore, find that such denial did not dispose of the jurisdictional issue or direct us to reach the merits of this case in spite of our finding that we lack jurisdiction.

Moreover, the language of Rule 303(a)(2) does not differentiate appeals filed before a

postjudgment motion has been filed, from those filed while a postjudgment motion is already pending at the circuit court. It provides that "[w]hen a timely postjudgment motion has been filed by any party, *** a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, or before the final disposition of any separate claim, becomes effective when the order disposing of said motion or claim is entered." Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008). Thus, the rule only looks to when a pending motion is disposed of and allows a premature appeal to become effective even if it was filed when a postjudgment motion was already pending and the party filing it was aware that the judgment appealed from was not final at that time. Therefore, it cannot be argued that Rule 303(a)(2) only protects parties who file appeals that are permitted at the time of filing but become premature when another party files a postjudgment motion.

Thus, the argument that Rule 303(a)(2) is inapplicable to appeals from administrative proceedings because of the apparent distinction between postjudgment motions at lower court proceedings and applications for rehearing in administrative proceedings does not hold up. As the court noted in *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738-39, 858 N.E.2d at 73-74, the Act, which requires parties to file an application for rehearing before seeking judicial review, also allows a party to appeal to this court once the ICC has refused that party's own application for rehearing, independently from other parties' motions. In light of those terms of the Act, it is not finality that prevents this court from reviewing an appeal filed during the pendency of other parties' application for rehearing, but the "last pending post-judgment motion" provision of Rule 303(a)(1). See *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738-39, 858 N.E.2d at 73-74.

The court in *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460, also recognized that Rule 303(a)(2) was applicable to the issue of which court had first acquired jurisdiction, at the supreme court's direction. The language of Rule 303(a)(2) is fully consistent with that conclusion in that it permits a premature notice of appeal to become effective when the appeal becomes mature even if that notice of appeal was filed when postjudgment motions were already pending. Therefore, it cannot be argued that Rule 303(a)(2) can only protect parties who file appeals which at the time of the filing are in the stage of finality with no other matters pending, but which become premature after the notice of appeal is filed pursuant to the provisions of Rule 303(a)(1) when another party files a postjudgment motion. Accordingly, there is strong indication that Rule 303(a)(2), whether before or after its amendment, is equally applicable to appeals from orders by administrative agencies as it is to appeals from decisions by circuit courts.

The People also contend that Rule 303(a)(2) does not apply to the Utilities' petition because "where a claim is cognizable in the first instance by an administrative agency alone, administrative remedies must be exhausted before the case may be considered by the courts," citing *Citizens Utilities Co. of Illinois v. O'Connor*, 116 Ill. App. 3d 369, 373, 451 N.E.2d 946, 949 (1983). While we acknowledge that an application for rehearing must have been filed and disposed of by the ICC for a party to have exhausted its administrative remedies and become eligible to seek judicial review (*Citizens Utilities Co.*, 116 Ill. App. 3d at 374, 451 N.E.2d at 949), we find that this requirement does not conflict with Rule 303(a)(2) in this case.

As previously noted, the Act permits any party to seek judicial review once its petition for rehearing has been denied and is only premature because of the "last pending motion" provision of

Rule 303(a)(1). *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738-39, 858 N.E.2d at 73-74.

Thus, although the Utilities and the People had to seek rehearing of the order from the ICC before

filing a petition for judicial review, they had exhausted their own administrative remedies by the

time they filed their appeals at the Second District because their applications for rehearing had

already been denied by the ICC.

The People, nevertheless, contend that Rule 303(a)(2) is inapplicable to premature

petitions from an administrative decision because the Act, which confers limited jurisdiction on

appellate courts and does not allow appeals from administrative orders until an order on rehearing

is entered. In doing so, the People maintain that sections 10-201(a) and 10-113(a) of the Act

preempt Rule 303(a)(2) because appeals from the ICC must strictly follow the language of the

Act.

The supreme court recognized, in *County of Cook, Cermak Health Services v. Illinois*

*State Local Labor Relations Board*, 144 Ill. 2d 326, 334, 579 N.E.2d 866, 870 (1991), that the

supreme court and the legislature have concurrent constitutional authority to promulgate

procedural rules governing direct appellate court review of administrative decisions. See also

*Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74 ("*Cermak Health Services*

recognized that the Illinois Constitution confers concurrent constitutional authority upon our

supreme court and the legislature to promulgate procedural rules concerning direct appellate

court review of administrative decisions"). The legislature may preempt supreme court rules

addressing the same issue only where it expressly exercises its authority to promulgate such rules.

See *Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74 (*"Cermak Health*

*Services* teaches that where the legislature expressly exercises its authority to promulgate those rules, it may preempt a supreme court rule addressing the same subject"). However, such a conflicting enactment will be struck down where it "'unduly infringe[s] upon our [supreme court's] constitutional rule-making authority.'" *Cermak Health Services*, 144 Ill. 2d at 334, 579 N.E.2d at 870, quoting *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273, 281, 492 N.E.2d 1322, 1326 (1986); see also *Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74 ("*Cermak Health Services* instructs further that the legislative enactment will be struck down where it '"unduly infringe[s] upon [our supreme court's] constitutional rule-making authority"'"), quoting *Cermak Health Services*, 144 Ill. 2d at 334, quoting *O'Connell v. St. Francis Hospital*, 112 Ill. 2d at 281.

Nevertheless, the use of such legislative authority must be explicitly stated (*Cermak Health Services*, 144 Ill. 2d at 335, 579 N.E.2d at 870), and courts will not imply a statutory provision in conflict with a supreme court rule when the General Assembly did not express an intent to preempt the rule (*Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74). As previously noted, section 10-201(a) is not in conflict with Rule 303(a), and the legislature did not intend to preempt that rule. See *Commonwealth Edison Co.*, 368 Ill. App. 3d at 739, 858 N.E.2d at 74. Nor does the application of Rule 303(a) conflict with section 10-113(a) of the Act. As noted earlier, section 10-113(a) provides that "[n]o appeal shall be allowed from any *** order or decision of the Commission unless and until an application for rehearing thereof shall first have been filed with and finally disposed of by the Commission." 220 ILCS 5/10-113(a) (West 2008). The Act does not purport to preclude a notice of appeal prematurely filed during the pendency of

an application for rehearing from becoming effective once the application for rehearing is adjudicated. Accordingly, we find that neither section 10-201(a) nor section 10-113(a) of the Act preempts Rule 303(a)(2).

Having made this determination, we need not consider the separation of powers issue that would have been engendered if sections 10-113(a) and 10-201(a) of the Act and Rule 303(a)(2) were not mutually accommodatable. See *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 176, 874 N.E.2d 1, 6 (2007) (stating that courts "will not address constitutional issues that are unnecessary for the disposition of the case").

Nevertheless, the People also contend that if Rule 303(a)(2) is applicable, it required a new petition for review to be filed once the ICC's order on rehearing was entered to preserve appellate review. In doing so, the People note that under Rule 303(a)(2), "[a] party intending to challenge *** a judgment amended upon such motion, must file a notice of appeal, or an amended notice of appeal within 30 days of the entry of said *** amended judgment." Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008). The People maintain that since the ICC entered an amended order on rehearing, any jurisdiction acquired by the Second District was not properly preserved until after the First District acquired jurisdiction.

However, Rule 303(a)(2) requires an additional filing of a notice of appeal only if the party intends to challenge the merits of the new order disposing the postjudgment motion. "[W]here a postjudgment motion is denied, an appeal from the judgment is deemed to include an appeal from the denial of the postjudgment motion." Ill. S. CT. R. 303(a)(2) (eff. May 30, 2008).

In this case, when the Utilities and the People filed petitions for review in the Second

District, their applications for rehearing had already been denied, and those parties do not challenge the issue that was decided by the ICC in its order on rehearing. Accordingly, the rule did not require them to file a new notice of appeal to preserve jurisdiction in the Second District.

Thus, we find that Rule 303(a)(2) governs the petitions for judicial review filed by the parties in this case, and that under that rule, the Utilities' and the People's petitions filed in the Second District became effective on July 30, 2008, when the ICC entered its order on rehearing. Since no party filed a petition for review in the First District until July 31, 2008, the Second District was the court to first acquire jurisdiction over this matter, and under section 10-201(a) of the Act, it must retain jurisdiction until the merits of the appeal are disposed of. 220 ILCS 5/10-201(a) (West 2008); *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460.

We further note that although it may be argued that we are bound by the Second District's determination that this court has jurisdiction over this matter because of the law-of-the-case doctrine, such a contention would not prevail. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 742, 858 N.E.2d at 76-77. Ordinarily, "[t]he law-of-the-case doctrine generally provides that 'a rule established as controlling in a particular case will continue to be the law of the case' in the absence of error or a change of facts." *Commonwealth Edison Co.*, 368 Ill. App. 3d at 742, 858 N.E.2d at 76, quoting *People v. Patterson*, 154 Ill. 2d 414, 468, 610 N.E.2d 16, 41 (1992).

However, the doctrine binds a court only where the prior decision was final. *Patterson*, 154 Ill. 2d at 468, 610 N.E.2d at 41. The Second District has held that a ruling from one appellate court that a co-equal appellate court has jurisdiction and transfer order of that matter "is tantamount to the denial of a motion to dismiss for lack of jurisdiction." *Commonwealth Edison*

*Co.*, 368 Ill. App. 3d at 742, 858 N.E.2d at 76-77. The court in *Commonwealth Edison Co.*, 368 Ill. App. 3d at 742, 858 N.E.2d at 77, also noted that the denial of a motion to dismiss is an interlocutory order, which may be modified or revised by a successor court at any time before a final judgment is entered. That court also found that since there is but one appellate court, a panel of one district court revisiting, during an ongoing appeal, an issue that another panel addressed in a ruling on a motion to transfer is the equivalent of one trial judge revisiting an interlocutory decision of the judge he succeeded. *Commonwealth Edison Co.*, 368 Ill. App. 3d at 742, 858 N.E.2d at 77. Therefore, the law-of-the-case doctrine does not preclude our decision to re-transfer this matter to the Second District.

We also note that while neither party has argued that we are but one appellate court, and the jurisdictional requirements of section 10-201(a) of the Act govern venue instead of jurisdiction, in which case the Second District had discretion to transfer the matter to this court, such contention would be unpersuasive. A court's authority to transfer a case to another venue is not absolute, and in ruling on a motion to transfer a case under the doctrine of *forum non conveniens*, courts are directed to consider several factors, including the plaintiff's choice of forum, and such rulings are subject to review under the abuse of discretion standard. See *Speigelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826, 843, 911 N.E.2d 1022, 1038 (2009) (court denied motion to transfer venue on *forum non conveniens* grounds because relevant factors did not favor the transfer).

Moreover, although different appellate districts may have general jurisdiction over a petition for judicial review from an administrative decision, it can only have subject matter

jurisdiction as provided under section 10-201(a) of the Act. *Ferndale Heights Utility Co. v. Illinois Commerce Comm'n*, 112 Ill. App. 3d 175, 179, 445 N.E.2d 334, 338 (1982). In *Ferndale Heights Utility Co.*, 112 Ill. App. 3d at 179, 445 N.E.2d at 338, where a petition for review was filed in the wrong county and later transferred to the proper court, this court held that jurisdiction and venue are "distinct legal concepts," and that when a court reviews an order from the ICC, it exercises special jurisdiction and must comply with the Act's requirements. The court then noted that since the Act requires litigants to comply with its jurisdictional requirements to appeal from an administrative order, when a petition for review did not satisfy those requirements, the court lacked subject matter jurisdiction over the appeal. *Ferndale Heights Utility Co.*, 112 Ill. App. 3d at 179, 445 N.E.2d at 338. In line with that decision, the Second District in *Commonwealth Edison Co.*, 368 Ill. App. 3d at 738-39, 858 N.E.2d at 74, found that it did not have jurisdiction over an appeal from a decision by the ICC where another district court had first acquired jurisdiction, even though it acknowledged that we are one appellate court. Similarly, the Fourth District ruled, in *Madigan*, 394 Ill. App. 3d at 390, 915 N.E.2d at 460, that it did not have subject matter jurisdiction under section 10-201(a) of the Act, over a petition for review of an administrative order that had first been filed in the First District, and transferred the appeal to this court. Thus, in the absence of a supervisory order, we find that this court lacks subject matter jurisdiction under section 10-201(a) of the Act because it was not the first court to acquire jurisdiction over this matter.

However, although this court lacks subject matter jurisdiction over this appeal, dismissing the case is not its only option. This court has recognized that when a court lacks subject matter

-25-

jurisdiction under the Act, it has the authority, in the exercise of its general jurisdiction to transfer a case to a court of competent jurisdiction if it will cure the defect and avoid the necessity of dismissing the appeal. *Ferndale Heights Utility Co.*, 112 Ill. App. 3d at 179, 445 N.E.2d at 338.

For the foregoing reasons, we conclude that we do not have jurisdiction over this appeal and transfer the matter to the Appellate Court for the Second District.

Appeal transferred.

CAHILL, P. J., and McBRIDE, J., concur.